**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **CAROL JANET HAWKINS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 505-CV-154** |
| | § | |
| **WADLEY REGIONAL MEDICAL CENTER** | § | |
| **and RACHAEL KEILIN, M.D.** | § | |
| **Defendants.** | § | |

## BRIEF IN SUPPORT OF JURY INSTRUCTION

COMES NOW, Defendant, Wadley Regional Medical Center, and files this its Brief in Support of Jury Instruction, specifically, the instruction "You are also to presume that Plaintiff CAROL JANET HAWKINS took too many of her Lortab pain medication prescription pills," and in support of the same shows the following:

**I.
Factual Background**

On September 6, 2003, Plaintiff was involved in a motor vehicle accident resulting in various injuries, including multiple fractured ribs. After Plaintiff was admitted to Wadley for overnight observation, she was discharged to go home the following day with a prescription for narcotic pain medication (Lortab). More than twenty-four (24) hours after the discharge from Wadley, Plaintiff presented to the St. Michael ER in an obtunded (unconscious) state. At that time, family members told medical staff that the Plaintiff's condition was due to an overdose of her narcotic pain medication. These statements are documented by medical records from St. Michael as well as sworn testimony by Dr. Bailey, one of her treating physicians while at St. Michael. Consequently, the Plaintiff was

administered Narcan (Naloxone), which is a drug overdose reversal agent, to which she immediately responded by becoming more alert.  The medical care staff at St. Michael asked the family to bring the prescription pills to the hospital in order for the medical staff to determine how much of the pain medication the patient had taken and/or to rule out a drug overdose.  The family failed to comply with the hospital's request, and instead threw the pills away.

Plaintiff has filed a lawsuit against Wadley and Dr. Keilin alleging that they prematurely discharged her from Wadley hospital.  She further alleges that this premature discharge caused her to experience respiratory failure, which led to her obtunded (unconscious) state, which in turn led to a litany of problems she later experienced while at St. Michael and Dubuis Hospitals.  Both Defendants have contested any malpractice and have further contested any causation.  Specifically, both Defendants have alleged that the medical problems complained of by the Plaintiff were caused by her overdose, and nothing more.  The family member who once told the doctor that her mother took too much pain medication has now changed her story to state that she never told the doctor Plaintiff took too much pain medication.  However, Plaintiff has failed to produce the pills in question in order to counter the medical records and testimony that suggests Plaintiff presented to St. Michael suffering from the effects of a drug overdose.  To the contrary, the pills have been thrown away.

## II.
## Legal Authority

In spoliation cases, a wide variety of sanctions are available to this court, ranging from adverse inference rulings to monetary sanctions or both.  *See, e.g., Chilcutt v. United*

---

*States*, 4 F.3d 1313, 1323 n. 23 (5th Cir. 1993) (noting that "Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions"); *Bayoil, S.A. v. Polembros Shipping Ltd.*, 196 F.R.D. 479, 481 (S.D. Tex. 2000) ("This Court has the inherent power, as well as the authority expressly granted to it under the Federal Rules of Civil Procedure, to impose sanctions where warranted.") (noting a variety of sanctions available to courts under Rule 37 and striking defenses when defendants "engaged in a pattern of obfuscatory, misleading, and untruthful conduct"); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970) (finding that district court's granting of a default judgment was proper under Rule 37 and noting that "the application of sanctions is entrusted to the discretion of the trial judge"). Such harsh remedy may be appropriate when, as in the present case, the Plaintiff, or someone acting on the Plaintiff's behalf, intentionally destroys relevant evidence.

Spoliation can be defined as "the destruction or significant alteration of evidence or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *See also Menges v. Cliff Drilling Co.*, 2000 U.S. Dist LEXIS 8478 *4 (E.D. La. 2000) (defining spoilation as "intentional destruction of relevant evidence"). The spoliation of evidence may result in an inference that the evidence would have been unfavorable to the party responsible for the destruction or failure to preserve. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). This type of sanction may serve a variety of purposes including, for example, deterring parties from destroying evidence; placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and restoring the party harmed by the

---

loss of evidence helpful to its case to where the party would have been in the absence of spoliation. *West*, 167 F.3d at 779; *see also* 9 C.F.R. §§ 160.2 et seq. (noting that employers must maintain personnel records, and the duty of preservation is significantly enlarged when reasonable probability of suit exists or suit is filed).

### III.
### Argument

Plaintiff knew, or had reason to know, that the pain medication was relevant evidence that should have been preserved for trial. Agents of the Plaintiff disposed of the pain medication at or near the time that Plaintiff made the decision to pursue litigation against Defendants.

Plaintiff's family members testified that the pain medication was destroyed after Plaintiff was in the hospital for several weeks or a couple of months. Plaintiff's daughter, Virginia "Ginger" Whitworth, admits that she knew about the potential overdose when Plaintiff was in the emergency room at St. Michael's. Oral Deposition of Virginia Whitworth, p. 54, lines 18-19. Ms. Whitworth also claims that she knows that the family did not bring the pills up to the hospital:

A.   I know he [Todd Emerson] did not bring the pain medication up [to St. Michael's].
Q.   How do you know that?
A.   Because when she got stable. Because Dr. Hekier said she OD'd. I went to his house. Got the pills out and counted 36 pills in that bottle.

Id. at p. 57, lines 17-22. Ms. Whitworth also testified that her brother brought all of Plaintiff's other medication to the hospital, but not the pain medication. Id. at p. 58, lines 8-18. Ms. Whitworth stated that the pills were around for a couple of months after Plaintiff went to the hospital. Id. at p. 104, lines 23-24. Ms. Whitworth believes that Plaintiff was

in Dubuis Hospital when the decision was made to contact the lawyer.  Id. at p. 80, line 15.

Plaintiff was transferred to Dubuis Hospital from St. Michael's on November 4, 2003, almost

two months after presenting to St. Michael's emergency room.  Therefore, the pills were

disposed of around the same time the family began pursuing litigation.

Dr. Bailey, Plaintiff's treating physician, testified at his deposition that the Plaintiff's

daughter told him that Plaintiff took too many of her pain pills.  Specifically, he testified:

Q.    So you heard the daughter tell you, "My mother took too much medication?"

A.    Right.  And there were other people there.  And I am not sure what their relationship was.

Oral Deposition of Dr. Bailey, p. 16, lines 2-5.  The Plaintiff's daughter did not bring the pills

up to the hospital so that Dr. Bailey could count the pills that were left.  Id. at p. 54, lines

7-20.  Dr. Bailey also testified:

Q.    Did – did you ask the daughter if she – they still had the bottle of pills available?

A.  I'm – I'm sure we did.  I'm sure – that's a standard question that I ask anybody and – and – oftentimes when you ask them to bring the bottle up so we can count the pills remaining to see, well, when was this filled? And we try to extrapolate that out and many times that doesn't happen.  The majority of overdoses, either they can't find the bottle or, you know,  they never bring it up.  They never bring it up to the hospital.  We request that.  That's a standard, you know, toxicology type of situation where we would ask that.

Id. at p. 95, line 22 - p. 96, line 9.

---

**BRIEF – JURY INSTRUCTION**                                                        **P. 5**

The family members' testimony about the pain medication is contradictory. The daughter-in-law of Plaintiff claims that she disposed of the pills because there were conversations among the family members that Plaintiff was allergic to the pills. Oral deposition of Lisa Emerson, p. 65, line 11 - p. 66, line 12. The daughter of Plaintiff, Virginia "Ginger" Whitworth, testified that the pills were disposed of because Lisa has young children. Oral Deposition of Virginia Whitworth, p. 40, lines 20-25. The son of Plaintiff testified that the pills were disposed of because his wife did not want it in the house with the children, although there are safe places to keep medicine in the house away from the children. Oral Deposition of Todd Emerson, p. 90, line 3 - p. 93, line 9.

Plaintiff is claiming that she did not overdose/overmedicate, yet cannot present the pills as evidence. Plaintiff's family did not bring the pills to the hospital, although requested by the medical care providers, to prove that Plaintiff did not overdose on her medication. Instead, Plaintiff's family destroyed the evidence relating to the pain medication. At the time that Plaintiff's family had destroyed the evidence, Plaintiff's daughter was contemplating a lawsuit. The Plaintiff's daughter, who admits that she was told that the doctors believe her mother overdosed on pain medication, claims to have counted the pills, yet did not take the pills to the hospital as the medical personnel requested. This same daughter contacted the Plaintiff's attorneys about pursuing litigation around the same time the pills were discarded. Yet she did not take steps to preserve evidence that was relevant to the present cause of action, or present proof to the hospital that there was not an overdose. Instead, Plaintiff's daughter claims that the medication was destroyed. Therefore, the family of the Plaintiff destroyed evidence that would have been relevant in the lawsuit, and that would have assisted the trier of fact in determining causation in the

present lawsuit, knowing that there was a likelihood that litigation would ensue.  The best evidence, and the one piece of evidence that is most relevant to the determination of causation in this case, was destroyed by the Plaintiff's family.  Therefore, the Court can instruct the jury to presume that the Plaintiff took too many of her pain medication prescriptions.

## IV.
## Conclusion

Plaintiff's family members destroyed evidence that was relevant to the present cause of action at a time when Plaintiff and Plaintiff's family knew that there was a potential lawsuit.  The Court is permitted to presume that the evidence destroyed was detrimental to the Plaintiff, or the Plaintiff and/or her family would not have destroyed the evidence.  Further, the Court is permitted to instruct the jury that they are to presume that the Plaintiff's family destroyed the evidence because the evidence was detrimental to the Plaintiff.  Therefore, Defendant Wadley requests the instruction that "You are also to presume that Plaintiff CAROL JANET HAWKINS took too many of her Lortab pain medication prescription pills," to be included in the jury charge submitted to the jury.

WHEREFORE, PREMISES CONSIDERED, Defendant Wadley requests that the Court include the aforementioned instruction in the jury instructions submitted to the jury in this case.

Respectfully submitted,

**NORTON & WOOD, L.L.P.**
315 Main Street
P.O. Box 1808
Texarkana, Texas 75504-1808
(903) 823-1321 telephone
(903) 823-1325 facsimile


By: /s/ Marshall C. Wood
    Marshall C. Wood
    Texas Bar No. 00797690

    Cyndia M. Hammond
    Texas Bar No. 24035891

    Attorneys for Defendant, Wadley Regional
    Medical Center

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document, has been forwarded to the following counsel of record on this 8th day of August, 2006:

Mr. Tom Needham
5144 Village Creek Drive
Plano, Texas 75093

Attorney for the Plaintiff
Carol Hawkins

Kay Ellington
211 N. Record Street, Ste 550
Dallas, Texas 75202

Attorney for Defendant
Rachael Keilin, M.D.

Darryl J. Silvera
The Silvera Firm, P.C.
101 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244

Attorney for Intervenor
Pacific Employers Insurance Company

/s/ Marshall C. Wood
Marshall C. Wood